IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A., an Italian corporation, and OAKLEY, INC., a Washington corporation, and COSTA DEL MAR, INC., a Florida corporation,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br><br>CHRISTY AMACHER D/B/A PRETTY DISCOVERIES BOUTIQUE,<br><br>　　　　Defendant. | Case No. _____ |

## COMPLAINT

Plaintiffs, Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc. (collectively, "Plaintiffs"), through their undersigned counsel, sue Defendant, Christy Amacher ("Defendant"), and allege:

## INTRODUCTION

1. This case concerns the violation of the Plaintiffs' intellectual property rights by Defendant Amacher's ongoing sale of sunglasses in Tennessee bearing counterfeits of one or more of Plaintiffs' trademarks (the "Counterfeit Merchandise"). Through this action, Plaintiffs seek to address Defendant Amacher's counterfeiting activities, as well as to protect unknowing consumers from purchasing low quality and potentially dangerous Counterfeit Merchandise. Plaintiffs have been and continue to be irreparably harmed by Defendant Amacher's unlawful actions.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the parties and over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it involves a claim arising under 15 U.S.C. § 1114 (the "Lanham Act").

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant Amacher because she continues to infringe Plaintiffs' famous trademarks in this Judicial District.

## PARTIES

4. Plaintiff, Luxottica Group S.p.A. ("Luxottica Group") is an Italian corporation with a principal place of business in Milan, Italy.

5. Plaintiff, Oakley, Inc. ("Oakley") is a corporation organized and existing under the laws of the State of Washington, having a principal place of business in Foothill Ranch, California. Oakley is an indirect, wholly owned subsidiary of Luxottica Group S.p.A.

6. Plaintiff, Costa Del Mar, Inc. ("Costa") is a corporation organized and existing under the laws of the State of Florida, having a principal place of business in Daytona, Beach, Florida. Costa is an indirect, wholly owned subsidiary of FGX International, Inc.

7. Defendant, Christy Amacher ("Amacher") is an individual residing in Tennessee and currently doing business in Tullahoma, Tennessee. Defendant Amacher owns and operates a retail clothing and accessories store located at 115 NW Atlantic St., Tullahoma, Tennessee. Defendant Amacher operates her business under the trade name "Pretty Discoveries Boutique." Defendant Amacher is directly engaging in the promotion and sale of Counterfeit Merchandise within this Judicial District.

## FACTUAL ALLEGATIONS

A. The World-Famous Luxottica Brands and Products.

8. Luxottica Group is engaged in the manufacture, marketing and sale of premium, luxury and sports eyewear throughout the world. Luxottica Group's proprietary brands include Ray-Ban, the world's most famous sun eyewear brand, as well as Vogue Eyewear, Persol, Oliver Peoples, Alain Mikli and Arnette, among others.

9. Through its affiliates and subsidiaries, Luxottica Group operates over 7,000 optical and sun retail stores, including LensCrafters, Pearle Vision and ILORI in North America, OPSM and Laubman & Pank in Asia-Pacific, LensCrafters in China, GMO in Latin America and Sunglass Hut worldwide.

10. Luxottica Group's Ray-Ban products are distributed and sold through its optical and sun specialty retail stores, authorized retail and department stores, and via its various websites, including www.ray-ban.com, throughout the United States, including Tennessee.

11. Luxottica Group has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Ray-Ban products, including but not limited to those detailed in this Complaint.

12. Luxottica Group has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Ray-Ban Trademarks (defined below). As a result, products bearing the Ray-Ban trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Luxottica Group, and have acquired strong secondary meaning.

13. Luxottica Group is the owner of various trademarks under the Ray-Ban brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Ray-Ban Trademarks"):

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 650,499 | Ray-Ban | For: sunglasses, shooting glasses and ophthalmic lenses in class 9. |
| 1,093,658 | Ray-Ban | For: ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles and goggles; and cases and other protective covers for sunglasses, eyeglasses, spectacles in class 9. |
| 1,080,886 | RAY-BAN | For: ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles in class 9. |
| 1,320,460 | Ray-Ban (circle logo) | For: sunglasses and carrying cases therefor, in class 9. |
| 3,522,603 | Ray-Ban (red box logo) | For: sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, cases for eyeglasses in class 9. |
| 1,511,615 | LUXOTTICA | For: eyeglasses, sunglasses, temples and eyeglass frames in class 9. |

| | | |
|---|---|---|
| 2,971,023 | *RB* | For: sunglasses, eyeglasses, eyeglass lenses in class 9. |
| 590,522 | G-15 | For: Sunglasses and ophthalmic lenses, in class 9. |

14. Luxottica Group has long been manufacturing and selling in interstate commerce eyewear under the Ray-Ban Trademarks.[1] These registrations are valid and subsisting and the majority are incontestable.

15. The registration of the Ray-Ban Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Luxottica Group's exclusive right to use the Ray-Ban Trademarks in connection with the goods identified therein and other commercial goods.

16. The registration of the Ray-Ban Trademarks also provides constructive notice to Defendant of Luxottica Group's ownership and exclusive rights in the Ray-Ban Trademarks.

17. The Ray-Ban Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

18. The Ray-Ban Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

---

[1] All registrations originally held in the name of Luxottica Group's predecessor's owner of the Ray-Ban Trademarks, Bausch and Lomb, were assigned in full to Luxottica Group in 1999.

**B.  The World-Famous Oakley Brand and Products.**

19.     Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other related merchandise.

20.     Oakley products are distributed and sold to consumers through its own Oakley O stores, its affiliate's sun retail stores, authorized retailers, and via its internet website: www.oakley.com throughout the United States, including Tennessee.

21.     Oakley has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Oakley products, including but not limited to, those detailed in this Complaint.

22.     Oakley has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Oakley Trademarks (defined below).  As a result, products bearing the Oakley Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Oakley and have acquired strong secondary meaning.

23.     Oakley is the owner of various trademarks under the Oakley brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Oakley Trademarks"), among others:

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 1,984,501 | ⬭ | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories in class 9. |
| 1,980,039 | OAKLEY | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 3,151,994 | (ellipse logo) | For: protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses and sunglasses and their parts and accessories in class 9. |
| 5,636,292 | HOLBROOK | For: eyewear, namely, sunglasses, goggles for sports, spectacles and their parts and accessories in class 9. |
| 3,665,464 | HDO — OAKLEY HIGH DEFINITION OPTICS | For: protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |

24. Oakley has long been manufacturing and selling in interstate commerce eyewear under the Oakley Trademarks. These registrations are valid and subsisting and the majority are incontestable.

25. The registration of the Oakley Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Oakley's exclusive right to use the Oakley Trademarks in connection with the goods identified therein and other commercial goods.

26. The registration of the Oakley Trademarks also provides constructive notice to Defendant of Oakley's ownership and exclusive rights in the Oakley Trademarks.

27. The Oakley Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

28. The Oakley Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**C.     The World-Famous Costa Brand and Products.**

29.     The Costa eyewear brand was born in Daytona Beach, Florida in 1983.

30.     Costa has continuously sold Costa branded products, including eyewear, apparel, and other related merchandise through its authorized retailers and via its internet website: www.costadelmar.com throughout the United States, including Tennessee.

31.     Costa has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Costa products, including but not limited to, those detailed in this Complaint.

32.     Costa has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Costa Trademarks (defined below).  As a result, products bearing the Costa Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Costa and have acquired strong secondary meaning.

33.     Costa is the owner of various trademarks under the Costa brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Costa Trademarks"), among others:

| **Registration Number** | **Trademark** | **Good and Services** |
|---|---|---|
| 3,857,379 | COSTA | For:  sunglasses and sunglass frames in class 9. |
| 3273228 | (C logo) | For:  sunglasses, sunglass frames, sunglass lenses in class 9. |
| 5653366 | (C logo) | For:  eyeglasses and related accessories, namely, eyeglass lenses, eyeglass cases in class 9. |

34. Costa has long been manufacturing and selling in interstate commerce eyewear under the Costa Trademarks. These registrations are valid and subsisting.

35. The registration of the Costa Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Costa's exclusive right to use the Costa Trademarks in connection with the goods identified therein and other commercial goods.

36. The registration of the Costa Trademarks also provides constructive notice to Defendant of Costa's ownership and exclusive rights in the Costa Trademarks.

37. The Costa Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

38. The Costa Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**D.    Defendant's Counterfeiting Activities.**

39. On June 24, 2021, Luxottica Group's investigator visited Defendant Amacher's retail store located at 115 NW Atlantic St., Tullahoma, Tennessee. During that visit, the investigator discovered that Amacher was advertising, publicly displaying, and offering for sunglasses bearing logos and source-identifying indicia and design elements that are imitations of one or more of the Ray-Ban, Oakley and Costa Trademarks. Photographs depicting the sunglasses being offered for sale on that day are depicted below:







40. Luxottica Group's investigator purchased one pair of sunglasses bearing one or more of the Ray-Ban Trademarks for $89.00. Below is a photograph of the Ray-Ban trademarked sunglasses purchased from Defendant Amacher's retail store on June 24, 2021:



41. Luxottica Group's investigator purchased one pair of sunglasses bearing one or more of the Oakley Trademarks for $59.00. Below is a photograph of the Oakley trademarked sunglasses purchased from Defendant Amacher's retail store on June 24, 2021:



42. Luxottica Group's investigator purchased one pair of sunglasses bearing one or more of the Costa Trademarks for $140.00. Below is a photograph of the Costa trademarked sunglasses purchased from Defendant Amacher's retail store on June 24, 2021, along with the sales receipt for the three pair of sunglasses:





43. Luxottica Group, on behalf of itself, Oakley and Costa, subsequently inspected the sunglasses purchased on June 24, 2021, and determined that the sunglasses bore counterfeit reproductions of one or more of the Ray-Ban, Oakley and Costa Trademarks. Specifically, the sunglasses contained markings that were inconsistent with markings found on authentic Ray-Ban, Oakley and Costa trademarked sunglasses.

44. Defendant Amacher, without any authorization, license, or other permission from Plaintiffs has used one or more of the Ray-Ban, Oakley, and Costa Trademarks in connection with the advertising, distribution, offering for sale and sale of Counterfeit Merchandise.

45. The forgoing acts of Defendant Amacher constitutes direct trademark infringement in violation of the Lanham Act.

46. The foregoing acts of Defendant Amacher are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that the Counterfeit Merchandise offered for sale and sold by Defendant Amacher is authentic or authorized product of Luxottica Group, Oakley and Costa.

47. Defendant Amacher's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Merchandise and Luxottica Group, Oakley and Costa.

48. Defendant Amacher is well-aware of the extraordinary fame and strength of the Ray-Ban, Oakley and Costa brands, the Ray-Ban, Oakley and Costa Trademarks, and the incalculable goodwill associated therewith.

49. Defendant Amacher's knowing and deliberate hijacking of Luxottica Group's, Oakley's and Costa's trademarks, and sale of Counterfeit Merchandise has caused, and continues to cause, substantial and irreparable harm to Luxottica Group's, Oakley's and Costa's goodwill and reputation. In addition, the damage caused by Defendant Amacher is especially severe because the Counterfeit Merchandise is cheap and inferior in quality to products bearing authentic Ray-Ban, Oakley, and Costa Trademarks.

50. The harm being caused to Luxottica Group, Oakley and Costa is irreparable and Luxottica Group, Oakley and Costa do not have an adequate remedy at law. Luxottica Group, Oakley, and Costa therefore seek the entry of an injunction preventing the sale of Counterfeit Merchandise by Defendant.

51. Luxottica Group, Oakley, and Costa also seek damages as a result of Defendant Amacher's knowing, deliberate and willful disregard of the activities infringing Luxottica Group's, Oakley's and Costa's Trademarks.

# COUNT I
## Trademark Counterfeiting
**(15 U.S.C. § 1114)**

52. Luxottica Group, Oakley and Costa repeat and reallege the allegations set forth in Paragraphs 1 through 51 above.

53. This is a trademark infringement action against Defendant Amacher based on her unauthorized use in commerce of counterfeit imitations of one or more of the Ray-Ban, Oakley and Costa Trademarks.

54. Defendant Amacher has advertised, distributed, offered for sale and sold merchandise bearing counterfeits of one or more of the Ray-Ban, Oakley and Costa Trademarks without Luxottica Group's, Oakley's or Costa's permission.

55. The foregoing acts of Defendant Amacher are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Counterfeit Merchandise offered for sale and sold by Defendant Amacher is authentic or authorized product of Luxottica Group, Oakley and Costa.

56. Defendant Amacher's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Merchandise and Luxottica Group, Oakley and Costa.

57. Defendant Amacher has directly infringed Luxottica Group's, Oakley's and Costa's Trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

# PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc. respectfully request that this Court enter judgment in their favor and against Defendant Christy Amacher, as follows:

    A.    Finding that: Defendant Amacher has violated Section 32 of the Lanham Act (15 U.S.C. § 1114);

    B.    Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116, and 17 U.S.C. § 502, preliminarily and permanently restraining and enjoining Defendant Amacher, including her agents, employees, and all those persons or entities in active concert or participation with her from:

        1.    advertising, marketing, promoting, offering for sale, or selling any Counterfeit Merchandise, and engaging in any other activity constituting an infringement of any of Luxottica Group's, Oakley's and Costa's rights in their respective Ray-Ban, Oakley and Costa Trademarks; and

        2.    engaging in any other activity constituting unfair competition with Luxottica Group, Oakley and Costa or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of any trademark, service mark, name, logo, design and/or source designation associated with the Ray-Ban, Oakley and Costa Trademarks.

    C.    Requiring Defendant Amacher to file with this Court and serve on Luxottica Group, Oakley and Costa within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendant Amacher has complied with the injunction;

D. Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendant Amacher, has been authorized by Luxottica Group, Oakley and Costa, or is related in any way with Luxottica Group, Oakley, or Costa and their products;

E. Awarding Luxottica Group, Oakley and Costa statutory damages for trademark counterfeiting in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117);

F. Awarding Luxottica Group, Oakley and Costa their costs, investigatory fees, and expenses;

G. Awarding Luxottica Group, Oakley and Costa pre-judgment interest on any monetary award made part of the judgment against Defendant Amacher; and

H. Awarding Luxottica Group, Oakley and Costa such additional and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luxottica Group, Oakley and Costa request a trial by jury in this matter.

[SIGNATURE BLOCKS TO FOLLOW]

Respectfully submitted,


 /s/ Andrew Goldstein
**Andrew Goldstein, Esq. BPR # 037042**
**Jake VanAusdall, Esq. BPR # 035369**
*(admission pending)*
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
Facsimile: (615) 942-5914
agoldstein@colelawgrouppc.com
jvanausdall@colelawgrouppc.com
*Attorneys for Plaintiff*


-and-


David B. Rosemberg (Fla. Bar. 0582239)
(*pro hac vice motion to be filed*)
ROSEMBERG LAW
20200 W. Dixie Hwy., Suite 602
Aventura, FL 33180
Telephone: (305) 602-2008
Facsimile: (305) 602-0225
david@rosemberglaw.com